Take your time to get set up. Our second case is number 16-17717, Bruce Gates et al. v. TF Final Mile, LLC. Mr. Morgan. Yes, sir. Good morning, Your Honors. May it please the Court. My name is Ryan Morgan from Morgan & Morgan, and I am here on behalf of the underlying plaintiff, Bruce Gates, and those similarly situated. We are here today on the District Court's original order compelling arbitration of this matter. We would ask the Court here reverse that decision. The Court uses a de novo standard, as it knows, as well as the factual findings that Judge Thrash did find are given a clearly erroneous standard. Now here, the issue is whether the Transportation Worker Exemption of the Federal Arbitration Act applies, which exempts certain seamen and other transportation workers who are part of contracts employment from arbitration. At the underlying level, the Court found, the District Court found, that plaintiffs were transportation workers. This company, TF Final Mile, used to be called Dynamics, is a national company with locations all over the United States. They arrange shipment of goods, and then they provide the, quote, final mile delivery of those goods, and that's what my clients did. Here's a question for you. How is this case different from Oliveira, which the Supreme Court recently decided? It is not different. It is, that is a recent United States Supreme Court decision that held that even contracts such as this, that specify an independent contractor relationship, are still considered contracts of employment under the FAA. Plaintiff's argument would be that New Prime v. Oliveira dictates that this Court would have to reverse the District Court's opinion, because at the lower level, the District Court found, because this was an independent contractor agreement, it was not a contract of employment, and New Prime reverses that. I think New Prime has argued that you waived reliance on the First Circuit case. Have you waived reliance on the Supreme Court decision? No, ma'am. I do not believe so. Obviously, the two issues to consider with this exemption are, are they transportation workers, and are there contracts of employment? That's an issue that has been, and that's what New Prime addresses, is number two. That's an issue that has been litigated from the very get-go with the original motion to compel arbitration. In fact, both of our briefs in this appeal actually reference the New Prime District Court decision. Appellants, my clients, we cited it, as well as the company here. So, the timing of it is what I think is tricky, because the First Circuit's opinion came out three days before my reply brief was due. It obviously touches on issue number two, which is whether there's a contract of employment or not, and so we cited to it. So, no, I would argue that we did not waive it. That has been an issue since, since day one here. I would also ask is, let's put the situation in reverse. Let's say New Prime said independent contractor agreements are not contracts of employment. Then the company here, TIA Final Mile, would be arguing that case. Rightfully so. It's binding United States Supreme Court precedent, intervening precedent that has come out. This court must follow, all future district courts must follow when analyzing the transportation worker exemption. Did you file a 28-J letter or anything like that after the case came out from the Supreme Court? No, there was a motion to stay the case pending the appeal of New Prime to the United States Supreme Court. Then the decision was had, and then this court set it for oral argument. So, that is the timing of how it broke down here. So, yes, New Prime is properly before this court. At minimum, I think the court would have to remand it to the district court to consider New Prime. But New Prime is definitive. It doesn't leave open for interpretation that second issue of whether there is a contract of employment or not here. Are there any, if we agree with you, are there any Section 1 issues left to be resolved at the district court level, given how it previously decided the employee independent contractor issue? Not on that issue, no. New Prime would definitively say that this independent contractor agreement, subject to debating the merits of the FLSA claim later, is a contract of employment. No, no, I got that. If we agree with you on that point, are there any Section 1 issues left for the district court on remand before it reaches the merits of the complaint? I don't think for the district court. Only this court would need to consider whether the district court's findings of fact that these plaintiffs were transportation workers was clearly erroneous. Is this a class action or is this an individual action? It is a putative collective action under the Fair Labor Standards Act. Currently, I represent seven individuals in this case, Your Honor. So, it has to be opt-in? It is an opt-in class. We have not yet reached that point where a motion for conditional certification has been filed. Right. So, the only thing that the district court would then consider is it would be remand to consider New Prime. It's already found that these are transportation workers. New Prime says that independent contractor agreements, by law, are considered contracts of employment under the Section 1 exemption. Therefore, arbitration would be, the motion to compel arbitration should be denied. The courts, in regard to that transportation worker section here, there's been no rebutted testimony from the defendant here on that transportation worker issue itself. They did not cite any cases that have said these types of workers are not transportation workers. The subsequent case law that has developed, as this is kind of a newer area that's been developing here the last year or two, with the rise of the gig economy and all these independent contractor cases, have pretty uniformly held that these workers are in fact transportation workers. Earlier this year, in the Western District of Washington, that court ruled that Amazon local drivers, who are, again, the final mile deliverers of packages for Amazon, qualify for the transportation worker exemption, even though classified as independent contractors. Very similar situation as here. All the evidence before the district court and before this court is that these drivers are delivering goods that come from interstate commerce. They are delivered from all over the country. They come to local warehouses, immediately picked up, and then delivered to their final destination. The case law from this court, the United States Supreme Court, and other district courts, again, uniformly hold that the flow of interstate commerce is what the court is to look at to determine whether someone is in interstate commerce. In cases from the Waters case from the 11th Circuit, it discusses that even if a trip is only within the state, and it's part of an overall longer interstate trip, the whole trip is considered interstate. So here, there is no reason to disturb the factual findings that the court did find on the transportation side of the matter. And then because of the new prime decision, these agreements by law have to be considered contracts of employment. That has been the issue since day one on that issue, right, is whether these are contracts of employment. It's all over the briefs. I'll spare citing 20 pages of discussions of the contracts of employment, and this court should reverse the district court's opinion. All right. Thank you very much. Mr. Halting. Good morning. Tempting as it would be for me to stand here and argue that the other side has waived its ability to rely on the Olivera case, I'm not sure that's the right result here. I don't think we can ignore a Supreme Court case, a Supreme Court decision, even though it came out sort of in the midst of the proceedings here. So that's a procedural issue. Obviously, the court's going to have to make a determination on the issue of waiver. I wanted to focus much more heavily, though, on the question of arbitrability, because I submit that the new prime decision has not closed the door for further consideration by the district court of whether or not this dispute is arbitrable. And I'm going to focus on two main themes, if I can. First of all, the Olivera decision, the Supreme Court decision, involved a situation where there was no contention, no dispute about the fact that the individual, Mr. Olivera, was a driver. The Supreme Court decision even notes the fact both sides agree on that. Here we have a different situation, at least potentially, because the contract that's before the court, it's part of the record in the case, it's the independent contractor agreement signed by Mr. Gates, has some very unusual features that I don't think were present in the Olivera case. And while Olivera clearly, and I agree with Mr. Morgan, it stands for the proposition that a contract of employment can include an independent contractor agreement. Can't really dispute that because the Supreme Court has decided it. But what the Supreme Court didn't tell us is what are the contours of that decision. Think about the possibility that you have an individual who provides service to TF Final Mile, but also simultaneously is working for many other companies. Is that individual actually a worker similar to Mr. Gates? And in that regard, I think it's important to look at the language of the contract that's before the court here. And I'm reading specifically from that contract. It reads, the parties understand that contractor, that being Mr. Gates, offers its services equally to other companies, contract carrier, and or the public generally, common carrier. Contractor shall be free to perform concurrent delivery services for companies other than Dynamics. That's the predecessor company to TF Final Mile. So we have a situation here where the contract itself says that there's an understanding between the parties that Mr. Gates is working for other companies. Why do you think that matters or why do you think that potentially makes the arbitrability issue different? Because in the Olivera case, the parties didn't even get into the issue of whether or not this individual was other than a worker, a driver. It was stipulated essentially that he was a driver for that entity. He was a worker for that entity. If, in fact, you are working for a lot of different entities, and if, in fact, your contract says, you don't have to take a job, you can turn down any jobs you want, and that's what this contract says, then that's a significantly different situation. You're not dependent on one company. You're not a worker for that company. You are instead an entrepreneur. You're out there working for whatever company might wish to engage you, and I think that's an important fact that has to be looked at when one is looking at the contours of the Olivera decision. Likewise, the contract here has another interesting provision that I think is very pertinent. Specifically, it says that Mr. Gates himself doesn't even have to do any of the work, and I point to its article. It's Section 6B of the contract. Contractor need not perform any services personally but may hire or engage others as employees and or subcontractors to perform all or some of the contracted services. So, again, this raises an interesting situation. In the Olivera case, Mr. Olivera clearly worked for New Prime. From the record in that case, it appears he worked only for New Prime, and he did the services himself. The contract here says Mr. Gates doesn't have to do any of the work himself. He can get other people to do it for him. That's a very different situation. That's not a worker in the same sense as the court was considering in the Olivera case. So he can subcontract the work to somebody else? Absolutely. The contract says he's free to do that, and it's totally at his discretion. But he's the one that gets the money. He gets the money, but he can turn around and contract out, which is not an unusual scenario in the industry. A lot of that does, in fact, occur. I'm just throwing these facts out or these particular provisions of the contract out in support of the proposition. The district court has more work to do here. The district court has to look at the Olivera decision and then look at the contract before it and determine whether or not this fits within the scenario that was before the Supreme Court in Olivera. I have a second main point I wanted to emphasize. In the Olivera decision, Justice Gorsuch does an analysis of history. He now analyzes what the language of contract of employment meant back in 1925 when the Federal Arbitration Act was enacted. But he also makes a very interesting observation, and it's in the second to the last paragraph of the decision at page 543. He makes this observation in response to an argument that had been made by New Prime, which had filed the appeal in the Olivera case. New Prime had argued, well, even if you find that this is a contract of employment, this independent contractor agreement is a contract of employment, even if you make that finding, you still need to take a look at whether there are other reasons why you should enforce the arbitration provision. You know, it's the bargain that the party struck. Maybe you should enforce it for that reason. And Justice Gorsuch responds by saying, we granted certiorari only to resolve existing confusion about the application of the FAA, Federal Arbitration Act, not to explore other potential avenues for reaching a destination it does not. In other words, he's saying this decision deals strictly with what does contract of employment under the Federal Arbitration Act mean. It does not deal with whether or not disputes can be arbitrated for other reasons. And here we have a couple of pretty compelling reasons why I think this dispute could be arbitrated, even outside of the Federal Arbitration Act. First, there's the Georgia Arbitration Code. The Georgia Arbitration Code actually discusses contract of employment and excludes it. So in that sense, it is similar to the FAA. But there has been judicial interpretation of that statute, of the Georgia Arbitration Code. And I quote from the Court of Appeals decision in JOJA Partners v. Abrams Properties. And there the court ruled, where the contract clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control. So here we have a scenario where the FAA, as interpreted by the U.S. Supreme Court, has been interpreted to mean that independent contractor agreements are contracts of employment. That's what the Supreme Court said. Georgia appears to interpret its state arbitration laws to exclude contracts of employment, but not to exclude independent contractor agreements such as the one here. There's a strong basis for compelling arbitration under the Georgia Arbitration Code. That's an issue the district court needs to grapple with. That's an issue that I think we have a right to fully brief and argue to the district court. Secondly, the district court made a number of findings here about how the contract is written and what that contract means. And those findings, I think, strongly support a second reason why the court would wish to or should compel arbitration in this case, and that is that these parties struck a bargain. These parties, when they entered into the agreement, they both contemplated that they would enter into an independent contractor agreement. Mr. Gates, I think, was providing service for this company for 20-some years. In other words, he knew what he was doing. He knew he had entered into an independent contractor relationship. He had year after year, presumably, filed his taxes on that basis, taken deductions on that basis. As an independent contractor, as you know, one can deduct all your expenses of operating the business. In other words, he was no babe in the woods who had somehow got, you know, suckered into a relationship that he didn't anticipate or didn't want. He knew exactly what he was getting into. The contract, the independent contractor agreement, was very explicit about that. The parties anticipated and wanted an independent contractor relationship. You might say all that, too, about the New Prime case, right? We don't know any of those specific things about the New Prime case because I don't think those findings had been made below by the court. The findings about the fact that there was the individual operated his own business, was not under control of the principal. And so I would say that those facts were not flushed out, certainly, in the reported decisions in the New Prime case. I think they are relevant facts. I think they should be examined. They go to arbitrability. I mean, there is certainly, I think, I know there was reference to equity in the first argument today, but equity, I think, has a role always. And here, if you have two parties with settled expectations over a long period of time, and those expectations are that this is an independent contractor relationship and that disputes would be arbitrated, it seems to me that's another factor that the district court needs to take into account. I'm not suggesting here that the district court will necessarily reach one conclusion or another. All I'm suggesting is that this court is certainly not in a position to make a final and binding determination that this is not arbitrable or that it is arbitrable. I think, instead, this needs to go back. There's a lot more work that needs to be done at the district court. I don't want to put words in your mouth, but from all you've said, I take it that you would be satisfied with an order or an opinion that says that the district court's order compelling arbitration, dismissing the complaint, is reversed based on New Prime and the case is remanded for proceedings consistent with that decision. Your Honor, yes. Yes, I certainly would urge that the remand order also specifically direct the district court to reexamine the issue of arbitrability in light of New Prime. I mean, given the ruling in New Prime to take another look at the issue of arbitrability, I'm urging that this court should not close that door. This court should not say this case is not arbitrable. Excuse me, this dispute is not arbitrable. Instead, the court should say that's an issue on which the district court should conduct further proceedings. So you're agreeing with the other side on that, right? Yeah, tempting as it was for me to come in here and try to argue waiver to you, again, I don't think that I can in good faith say to the court, you should put your head in the sand and act as if the Supreme Court hadn't ruled in Oliveira. I mean, it's a significant ruling, and it does address the issues in this case. Mr. Morgan's right. The issue of contract of employment, it was raised throughout the case, so I think the right result here is to let the district court take another run at the question of whether this case is arbitrable, taking into account all of the elements that I've just laid out. All right. Thank you very much. Thank you very much. Mr. Morgan. Thank you. I'm going to take the issues the defendant raises in reverse and start with the Georgia Arbitration Code argument. The district court actually did address that. It was an untimely argument raised in the reply at the lower court level by the defendant, and if you look at page 203 of the appendix, the first paragraph of the lower court's order, they said it was an untimely argument and it was waived. This court has to utilize an abuse of discretion standard to overturn that. So the district court did actually address the Georgia Arbitration Code. But let's go down this path that Mr. Holton is suggesting, in that even if this court wants to overturn that particular part of the court's decision and allow the district court to look at it, there's still nothing to arbitrate here. Supreme Court precedent is extremely clear that parties have to arbitrate according to their terms. Even in new prime, quote, while a court's authority under the FAA to compel arbitration may be considerable, it isn't unconditional. Quote, the party's private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the act authorizes a court to stay in litigation and send it to arbitration. Subsequent, in Lamps Plus, also decided in 2019 by the Supreme Court, specifically said parties can agree to the rules by which they will arbitrate. If you look at the actual agreement here, which starts at page 51 of the appendix, the arbitration provision section itself is page 59 of the appendix. The parties agreed to resolve the dispute as described in this section. The arbitration provision is governed by the Federal Arbitration Act. Why shouldn't we leave it to the district court to make all these decisions? They may very well come out with the result that you're saying, but why should that be something that we decide rather than the district court? Because the district court already ruled that that argument was waived, that the Georgia Arbitration Code argument was waived. Certainly this panel can't affirm that part of the decision. Second, there's the legal matter. From a legal perspective, this arbitration agreement does not incorporate the Georgia Arbitration Code. In fact, the most recent case that I'm aware of on this issue is a case from the New Jersey Appellate Court, ARAFA, A-R-A-F-A, 2019 Westlaw 2375387. Virtually identical facts. Arbitration provision only says the FAA, and the court there ruled that because the FAA could not apply because of the transportation worker exemption, that the entire arbitration agreement is now void. And so from a legal matter, that is the same as here. Briefly, because I only have one minute left, I did want to address the one other point that Mr. Holton raised on further discussion of new prime at the district court level. Well, new prime doesn't distinguish between whether one person works for one company, two companies, or not. Here, you heard Mr. Holton say, Mr. Gates has worked there for 27 years. He's a full-time employee. He works for TF Final Mile. Even if somebody worked for multiple companies, under new prime it's still a contract of work and a contract of employment. Second, the argument about he could have been working for others, he could have had others doing the job, they didn't make that argument at the district court level. They could have. They could have said, look, Your Honor, he's also not a transportation worker because he didn't actually do the work. But they didn't. They argued he was only involved mostly in interstate deliveries, or I'm sorry, intrastate deliveries, not interstate deliveries. So they didn't even make that argument below here. The facts in the law before this court warrant a full reversal of the district court's opinion and find that arbitration is not appropriate here. Thank you. All right. Thank you both very much. Our third case today was canceled due to the illness of one of the attorneys. So we are finished for today and we'll be in recess until tomorrow.